and we have Mr. McGuire for Mr. Deppert. Good morning. Good morning, and Ms. Oaks for the Governor. Good morning. Good morning. All right, Mr. McGuire, you have two minutes reserved for rebuttal. Go ahead. Thank you. So this is a case in which two significant procedural errors led to an ultimately substantively unreasonable sentence, and I think it makes sense to begin by acknowledging this was a six-month sentence, and in the scope of cases that come before this court, a six-month sentence in terms of time is not particularly substantial. But I think that what is important here is this was a case in which there was a choice not just of degree of, as is often the case, how much time will someone get, but a question of kind, of whether it was essential that a person actually have their life disrupted by being placed in a custodial setting, by being sent to prison. So turning to the first procedural error, we've argued that the judge here did not consider and did not seriously consider at sentencing the availability of a home confinement sentence. And this was a case in which both the government and the defense agreed that a six-month period of home confinement was sufficient to achieve the goals of sentencing. But isn't that possibility obvious to any district judge, particularly one like, you know, Judge Bryant, who's been around for a while? I mean, you just look at the page of the guideline manuals where that appears, and it's perfectly obvious that there are non-custodial alternatives, aren't there? I agree. And so what's significant here, and I think that there are sort of… And both the government, as you said, both the government and the defense highlighted that possibility. So how could we say that the judge didn't pay attention or just didn't consider it? And certainly the claim is not that the judge was unaware of the existence of home confinement as an alternative, as you've just identified. Both parties put this forward as an available sentence. The concern was that, as set forth in our written submission, the judge at the first of two sentencing hearings indicated that she was not inclined to consider home confinement because of perceived costs specifically to probation. Now, I think that the government agrees. But she later disavowed that and said that didn't play a role. I mean, we went to the trouble of sending it back by mutual consent for the judge to explicate the effect of that observation. And she said, no, that wasn't what did it. And ultimately, the defense disagrees with the judge's assertion that would suggest that a post hoc rationalization does not actually explain what occurred at the time of sentencing. But I also think that you're saying that you're saying that we should say that the district judge was mistaken about her own rationales and intentions. So I think that I think that what we are left with is. And again, I think this is the two sides of the consideration of an impermissible purpose, namely the cost of home confinement and the judge's need to consider all available sentences. I actually keep referring to the cost, but putting aside the remand issue, I think initially wasn't really a cost. I think what you said was that they have better things to do with almost like just another would be a dollar cost. But there's a burden that they would have to verify going to work and things like that. Not necessarily that it would generate additional dollars and costs. Right. Isn't that what the initial statement was that the court made? We don't want to burden. So I agree that it's not. So it wasn't maybe it wasn't cost, but it was just an annoyance, I guess, the way I read it. And I think that in terms of what is cost, I agree that there isn't a suggestion that this would cost probation X number of dollars. There was a concern, again, about, let's say, time and effort. It also does, as a factual matter, cost probation money to operate these electronic monitors. So then there was a consideration specifically of the resources that it would require. And the question is whether at the final sentencing, the court, having previously indicated that she was not inclined to impose home incarceration or home confinement for this impermissible purpose, nonetheless, implicitly did consider home confinement and rejected. But if you look at the record, it doesn't seem to me that the sentence was driven by her misapprehension of the alternatives available to her. She thought on the basis of this record before her that your client was some sort of serious criminal. I mean, she kept adverting to the conviction he had 20 years or so before and, you know, the the office on offense, conduct and so forth. And, you know, at the end of the day, what I take away from this record is that she weighed his misconduct, ironically, much substantially heavier than both you and the government. But isn't that what discretion is all about? And I agree that the judge, the sentencing judge absolutely did weigh these factors far more heavily than either party suggested. I mean, if I were just a judge, I would it never would have occurred to me to send this man to jail. It might have occurred to me, but I wouldn't have done it. But that's neither here nor there. And I can't speak for my colleagues, but, you know, district judges have discretion in these matters. And, you know, you've got to. Well, I don't have to tell you what your burden is, but certainly. And I think that in terms of that, that is our other procedural argument, that there's an excessive reliance, particularly on Mr. Depard's very, very dated 1993 misdemeanor conviction, which resulted in no custody whatsoever. And she thought she was seeing Al Capone. I don't disagree. And I think that turning to the district judge's explanation after the remand, she indicated that she believed that this history of dishonesty, as she determined it, was relevant and implicated for the need for protection of the public and specific deterrence. Not only that, but I'm going to ask the government about this. I just want to make sure I understand the context that she said in terms of this pattern of dishonesty referencing the 1993 forgery. She also said, Mr. Mr. Depard didn't tell his employer about this pending case, which is dishonest, because he wanted to keep his job so he could make restitution. But my understanding is that he was that he didn't have the probation office, I guess, verified that he did not have to tell his employer about this conviction. So I am not sure why that would be dishonest. If he's not required to tell the employer, it seemed to me from the earlier proceeding, the district court opined that she believed that he should tell the employer and he shouldn't have that job. And that found it to be dishonest, even though there was no requirement to do so. I believe that the dishonesty she was concerned about concerned Mr. Depard's explanation to her of the reasonings for his not informing his employer. I do. That was all that was another. I think it was two things. I think she was saying it was dishonest. He didn't tell the employer, which I want to ask the government about. But she also when when she did ask him, you know, about that, he initially said, you know, I've been busy working, making restitution. And she didn't like that answer. But and then he said, you know, when she asked him directly, are you saying you didn't have time? And then backtracked and said, I was waiting for a final disposition. So there's that other issue, too. But I think she just she clearly did not like what he was saying at the sentencing in terms of how he was dealing with the whole. I agree. And I think that although I see that my time is up, that I think what's important here is that these instances of let's call them at most white lies are not connected to the concerns of protection of the public or specific deterrence. They simply do not raise a concern that Mr. What all of this discussion says to me is just it's an illustration of the way in which different judges will respond to the case. I must say the thing that leaped off the page to me as someone who back in the early 80s, when there was a sort of different set of cases in U.S. And the checks keep coming. And the person with limited resources can be very tempted in a situation like that. In those days, though, you had to actually forge the grandma's signature to cash the check. Now it's even worse. It's direct deposit. And maybe the person has a joint account and the money just appears and they can just withdraw it. So it's a very sympathetic case, except that I've never seen one in which not only did the person take the money, which seems like a kind of human if criminal response. But actually, not once but twice on two different occasions when his sister's death is discovered by the V.A. Affirmatively calls up the Veterans Administration. Impersonates his deceased sister and says, I'm alive and kicking and you should keep sending the money. And he persuades them and then they do it again. They find out again and they come back and say, we, you know, sorry, you're not going to pay you anymore because you're dead. And he goes back again and once again, impersonates his deceased sister. And maybe he thinks he's not being good enough at impersonating her voice or something, because then he asks not to have to talk to them anymore. We'll do it by email or in writing from here on in. And then when an agent comes to talk to him about what what's going on here, he says, my actually dead sister is locked up in the loony bin somewhere. And that's why you can't talk to her and she's not here. So talk about a pattern of dishonesty. This struck me as far removed from the typical deceased payee case in which I would think it would be rather automatic to say, well, shouldn't have done it. Pay back the money. Don't do it again. This is this is comes much closer to affirmative fraud than the typical case in this category. So it didn't surprise me whatsoever that Judge Brian thought there was a pattern of dishonesty right from the offense conduct itself that transcends the typical case of this nature. Why? Why are we talking about that? Isn't that what the problem is? Now, why goes to jail at the end of the day? So to begin, and I think there's the question of what does a typical case look like in cases like this? I'm aware that in terms of proof cases where you simply have someone taking money without any sort of affirmative misrepresentation, there can be a lack of sufficient evidence even to prove the offense because there's a need to show a person was aware that they were taking money they weren't entitled to. And so in my at least in my experience, cases of this sort do involve misrepresentation of an affirmative sort. I agree that there are multiple misrepresentations here. The district judges expressed concerns, though, relate to what she claims to be a part of our pattern pointing to as the other points in that pattern. Instances that were either incredibly old or we would submit don't show a pattern of similar conduct and particularly don't show a pattern of conduct, of a need to protect the public or a need to provide specific deterrence. At the end of the day, this offense is one created by the opportunity of the federal government inadvertently continuing to send money to someone who then receives it. And I think it can often be the case that someone becomes dependent upon that money. And as is the case here, made misrepresentations to continue that money flowing. All right. Good morning. My name is Amanda Oaks and I'm an assistant United States attorney in the District of Connecticut. May it please the court. The government respectfully requests that this court affirm the sentencing decision of the lower court and find that the lower court's imposition of a below at the bottom of the guidelines sentence of six months imprisonment was both substantively and procedurally reasonable. The issues on appeal really boil down to two big questions. The first being whether the district court relied upon an impermissible sentencing factor, that being the burden of home confinement or cost of incarceration in imposing the sentence, thereby making the sentence procedurally unreasonable. And the second question is whether this bottom of the guidelines sentence was manifestly unjust or shocking to the conscience, thereby making the sentence substantively unreasonable. The government submits that what should be. It's not really the bottom of the guidelines. Because the guidelines would have permitted a completely different non-incarcerative sentence. It's the bottom of the cell numbers in the cell that comes up. But that disregards the fact that this is a zone B sentence, I believe. And therefore, the actual bottom of the guidelines, something that the guidelines authorized that would have been a within guidelines sentence would have been something like home confinement. Am I wrong about that? No, that that is correct. Your Honor, the guidelines is a six to 12 month term of imprisonment. But because it's in zone B, there is the option for home confinement or a probationary sentence. That is correct. Your Honor. And what the government would be guideline sentence. There's no question about that. But I think it's a little misleading to call it a bottom of the guidelines. Understood, Your Honor. So I agree to ask you, I had reading the two proceedings together. One of the concerns that I had was and certainly, as you know, Judge Lynch articulated with respect to the conduct. Certainly, it's in her discretion to consider and decide what the sentence should be. But she seemed to be in the first proceed. I'll talk to you later. 85 of the record, she's saying, I think we should continue to work at this facility with mentally disabled people because he could take advantage of them because he's dishonest. And this seems to be a focus at the first proceeding. Then when there is the subsequent proceeding on page 116, she notes that I read it to Mr. McGuire that one of the reasons for her sentence she gives is he's been dishonest because he wants to keep his job and doesn't want to tell his employer. And my understanding is that he did not tell his employer, you know, under probation rules of when you tell an employer or not. So I'm just concerned that that may have played into the sentence. I don't think that would have been appropriate for that to be the reason to put him in jail. I don't think he'd be working there. What's your response to that? Your your honor is correct that Mr. Deppert was not required to tell his employer, but it's not dishonest then for him not to tell them. Right. Was it decided not to tell them? I do not believe so. But what but what I believe that the district court was was focused on was when she asked Mr. Deppert why he had not told him to be his employer. His response was that because he was focused upon making restitution payments and really wasn't giving the honest answer, which was that he was embarrassed, which was clarified during which he clarified during the second sentencing hearing. And I know you clarified the second sentence in the first sentence when they had that exchange. He did say initially working. And then when she challenged him about that, his response was actually I was waiting for the final disposition of everything. I could give them the parameters. I have nothing to hide. I will tell them when I return to work. So that's what I'm thinking. So I think he I think what he was saying there is I want to find out if I'm going to jail or not. If I'm not, you know, I want to be able to tell what the parameters are. I'm going to be gone for six months. I'll be gone for a month. I'm not going to be gone at all. So it wasn't that it took him to the next proceeding to sort of articulate that. He did it sort of immediately when she challenged him on his first response. Right. Yes. But I think that's like dishonesty. In other words, I'm concerned. Certainly the offense was dishonest, but I'm not sure I saw dishonesty. And again, we all know the deference district court judges get at sentencing and sort of judging the demeanor and responses to questions. But that exchange combined with he was dishonest for not telling them. We have some concerns about what would be considered in terms of whether it should be jail or home confinement or community confinement. And I think at the sentence at the second hearing, he explained that it's because he was embarrassed. And the government pointed out that that is what he could have said at the first hearing. But but I think, Your Honor, that the district court was taking this small instance in light of a larger pattern of conduct, which which Judge Lynch went over a little bit earlier. But it began with a with a previous offense for forgery in the third degree. And granted, that was many years ago. But then his pattern of dishonest conduct during the offense conduct was significant. He initially lied under penalty of perjury on a form that was submitted to the state of Massachusetts. Then he impersonated his deceased sister on numerous occasions. And then when federal agents came to question him, he lied after after that. And he was arrested. He lied to probation about the reasons in which he left or he was he left his employer. He told probation that he resigned when, in fact, he was fired for misconduct. So the judge, the district court had this entire pattern of dishonest conduct when when Mr. Deppert made those statements during the sentencing hearing. So I think that her consideration was not just limited on on that one statement, but it was taken. And the other thing she referenced was this issue of restitution. She had only one hundred fifty dollars in restitution. I guess he'd actually pay four hundred fifty dollars in restitution. But she also was upset about him having this property. And I think it was Houston. I don't know where it was. And why didn't he liquidate that to pay the restitution? And it was a back and forth where I thought he was trying to explain that it was it was lame. It was from a divorce. There's no money in that property. So there's that issue, too. That someone can't pay hasn't been able to pay the restitution. That should be a factor where they should go to jail or not. Right. I think on the issue of restitution, the Mr. Deppert gave the reason for not telling his employer during the first sentencing hearing was because he wanted to focus on paying restitution. And at that time, which the court pointed out, he'd only paid one hundred and fifty dollars of restitution. And then the issue of the property in Texas came up and the court adjourned to provide him with an opportunity to figure out what the status was with that property, because that would be something that would that we would want to go towards restitution. And at the time of the sentencing hearing, there was not a clear answer. So that's why the the sentencing hearing was effectively paused and went back up a few months later. So. So I think, you know what, this is what you're saying, that the property issue was raised because there was some ambiguity about it, but played no role in the end because he cleared it up and it was right that it didn't have any value or even actually owned it. Yes, that's correct, Your Honor. That's correct. And I think for this court's consideration, really focusing on Judge Bryant's notice where she explains all the factors that she considered in imposing the Senate. And in that notice, which is docket on circuit docket, docket number fifty six. She explicitly disclaims any reliance on the burden of home confinement and really lays out all of the factors that she really saw as being important. Those were the pattern of dishonest conduct, the seriousness of offense conduct, the need to protect the public, avoid and warranted sentencing disparities. And the government submits that all of those factors were proper and that the district courts in position of a six month sentence of incarceration was well within the range of permissible sentences. And for that reason, the government respectfully request that this court affirm the decision of the lower court. And I'm happy to answer any additional questions the court. And if not, I'd like to rest on my papers. Thank you. Thank you very much. Thank you. Mr. McGuire, you have two minutes in rebuttal. Thank you. And I do think it makes sense to briefly touch on this issue, issue of restitution at the sentencing. Mr. Depard expressed his desire and stated intent to make that make full restitution is how he put it. The court took that as another sign of dishonesty. I think that is better and much more accurately taken as a sign of intent. And for as I think demonstrates the reality behind that intent, he went from the hundred fifty dollar payment at the first hearing to four hundred fifty at the following hearing. I will note it's obviously not part of the record. Mr. Depard has continued to make restitution payments. We're in a case that obviously was sentenced back in twenty nineteen before the pandemic began. Mr. Depard, although he's had covered, is 66 years old. And I think some of the realities of prison have changed. And certainly the court, if the court were to revisit the sentence, the district court would have now a significant period of time to consider. Mr. Depard's conduct since sentencing. I will note that there is a precedential basis in the United States versus Al-Gaheem, 842 F. Third, 796, a decision from this circuit in 2016 for remanding, even absent a formal finding of error. And so I will note that this is a case where the district court expressed concerns about a pattern. And if the court were district court were provided with an opportunity to revisit, this case would have additional data points. What precisely would you have the decreed paragraph in any writing? We issued say so. Obviously, the request here is that the court determined that the sentence imposed was both procedurally and substantively unreasonable. If the court were unwilling to do that, if it determined that that was not appropriate, I think we would suggest that the court, especially because a resentencing is a relatively unburdensome procedure, provide an opportunity for the district court to consider whether any changed circumstances weigh upon its view of the appropriate sentence. Yeah, but why? Why? I think because of the concerns that you've expressed precisely concerning this being a case in which reasonable judges, including, I think, as you've articulated, Judge Parker, may have said, I would not have sent this person to prison, that it's something that is at most a very close call on that front. Mr. Depard has been on. You know, if that were the test, a fair number of the sentences I would say I'd make, I might send back. Who knows? And I have colleagues who would be at the other end of that spectrum, would send prejudice view back. But that's the regime we live in. And I agree. I think that what is unusual here is that this is a situation where the judge was very focused on what it described, what the court described as a pattern, including a pattern surrounding the time of sentencing. You know, what interests me here is, and I never thought I'd be saying this, I don't know why you don't ask for a new judge, because usually I think defense lawyers and other people, other appellants who are unhappy with the outcome over asked for a case to be reassigned to a new judge. And I appreciate that you're not you know, you're cautious about that remedy, which is rare. But we sent it back once to this judge and you're telling us in a said then about the reasons why she imposed the sentence in the first place. And the remedy is we're going to send it back again and say, at least if we don't say it's substantively unreasonable, which is the one thing that I don't think it is a close issue in this case. If we say you made some procedural errors, think about this again. Aren't we just doing the same thing we did the last time? Don't don't don't give so much weight to this factor or that factor. You said this and you probably shouldn't have. So now consider it without that. We did that and we got the same sentence. I think that's correct. And I think that caution is certainly the the correct term and a recognition that it tends to be an extraordinarily rare remedy. And so it's it's something that I think because of the rareness, it is not something that we have requested. But I think that the point is, as I say, I appreciate your caution in that regard. But in this particular case, you are, in fact, telling us we shouldn't believe what she said the last time it went back on me, which makes it a somewhat peculiar situation. But try again. Never give different reasons this time. And and I will say now, now that that issue has been raised and raised by the court, certainly we would, as the appellant would be happy for this case to return to a different different district judge for the exact reasons stated, that it does appear that the sentencing judge may well have made up her mind and may be unwilling to reconsider. We remain always hopeful that judges will visit. And as I've said, there are some new facts that could be put before the district judge at this point, including Mr. Deppert's increasing age and his his continued employment and his continued payment of restitution. But but certainly we would not object to that proposed remedy. All right. Thank you. Thank you to both of you. Thank you. Both of you will reserve decision.